## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.:

LUIS MCCARTHY,

     Plaintiff,

vs.

LIEBHERR-AMERICA, INC.,
a Foreign Limited Partnership,

     Defendant.

_____

### <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

COMES NOW the Plaintiff, LUIS MCCARTHY ("Mr. McCarthy" or "Plaintiff"), by and through his undersigned counsel, and sues the Defendant, LIEBHERR-AMERICA, INC. ("LUS" or "Defendant") and alleges the following:

1.     Plaintiff brings these claims against Defendant for race discrimination and national origin discrimination in violation of Title VII of the Civil Rights Act ("Title VII"), and the Florida Civil Rights Act ("FCRA"), and for retaliation in violation of Florida's Private Whistleblower Act ("FWA"). Plaintiff is seeking damages including back pay, front pay, compensatory damages, punitive damages, and his attorneys' fees and costs.

## JURISDICTION AND CONDITIONS PRECEDENT

2.      This Court has original jurisdiction over Plaintiff's Title VII claims as they arise under federal law, and the actions giving rise to this lawsuit occurred in Miami-Dade County, Florida.

3.      This Court has supplemental jurisdiction over Plaintiff's FCRA and FWA claims, as they arise out of the same set of operative facts and circumstances as his Title VII claims.

4.      Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about July 16, 2020.

5.      On or about March 16, 2021, Plaintiff received his Notice of Right to Sue from the EEOC.

6.      Plaintiff timely files this lawsuit within the applicable period of limitations against Defendant and has complied with all administrative prerequisites.

7.      All conditions precedent to this action have been satisfied and/or waived.

## VENUE

8.      Venue is proper because Defendant conducts substantial business in Miami-Dade County, Florida, and Plaintiff worked for Defendant in Miami-Dade County, Florida, where the actions at issue took place.

## **PARTIES**

9.     Plaintiff, who is an adult Hispanic male of Honduran descent and is protected by Title VII/FCRA because:

a.     He suffered discrimination by Defendant on the basis of his race and suffered discrimination based on national origin; and

b.     He objected to the discrimination; and

c.     He suffered an adverse employment action and was subjected to an increasingly hostile work environment based on race and national origin, and his objections to the discrimination, including being terminated for same.

10.     Defendant was at all material times an "employer" as defined by Title VII/FCRA, as it employed in excess of fifteen (15) employees.

11.     Plaintiff was at all material times an "employee" of Defendant as defined by Title VII/FCRA.

12.     Defendant is a foreign limited partnership that is registered to do business, and conducts business, in the state of Florida, including, among other places, Miami-Dade County, Florida.

13.     At all times material hereto, Plaintiff was an "employee" within the meaning of the FWA.

14.     At all times material hereto, Defendant was Plaintiff's "employer" within the meaning of the FWA.

15.     Defendant, at all times material to this Complaint, employed ten (10) or more employees, and is therefore a covered employer as defined by the FWA.

16.     Plaintiff contends that the theories of joint employment and/or joint enterprise coverage arise given the inseparable business relationship between LIEBHERR EXPORTS and LIEBHERR-AMERICA, INC.

## GENERAL ALLEGATIONS

17.     Mr. McCarthy worked for LUS as a Customer Service Manager, from February 29, 2016, until his termination on May 4, 2020.

18.     During his time with LUS, Mr. McCarthy was an excellent employee, with no history of attendance, performance, or disciplinary issues.

19.     Unfortunately, throughout his employment, Mr. McCarthy unearthed a pattern of unlawful and unethical business practices on behalf of LUS' managers.

20.     On top of that, during his tenure, LUS managers discriminated against our client by routinely making degrading comments about his race and national origin, while also and denying him opportunities due to these protected categories.

4

21.     On multiple occasions, Mr. McCarthy objected to the rampant and many-faceted illegal conduct at LUS, as well as the discrimination he endured at the hands of his superiors.

## FWA VIOLATIONS

22.     Within months of beginning his employment at LUS, Mr. McCarthy noticed that his managers were hiding assets and failing to pay required taxes under Federal Law.

23.     Specifically, LUS' Switzerland-based sister company, Liebherr Exports ("LEX"), would purchase merchandise/parts from Austria and Germany and subsequently send the parts on consignment to a third-party seller, Dellfrio.

24.     Dellfrio, based out of North Carolina, would then be in charge of selling the parts through a merchant portal.

25.     Shockingly, however, despite Dellfrio's efforts to forward the profit from these sales back to LEX, LEX refused payment for the parts Dellfrio had sold on LEX's behalf, leaving LEX's profits from these sales to sit within a Dellfrio-controlled bank account.

26.     Such a scheme allowed LEX to keep a treasure trove of taxable income unaccounted in its internal books, thereby evading any tax implications arising from such income earned.

27.     This conduct is fraudulent and wholly unlawful under 26 U.S.C. § 7206.

28.     As soon as our client discovered this, he reported the scheme and its legal implications to Head of Customer Service, Thomas Antl ("Mr. Antl").

29.     Shockingly, upon hearing our client's serious objections, Mr. Antl turned a blind eye to same and continued to allow LEX to engage in this unlawful conduct.

30.     Things took a turn for the worse when, in 2018, LUS' parent company, Liebherr International ("LIN"), decided that the responsibility to furnish Dellfrio with parts will now rest with LUS, and by extension, Mr. McCarthy.

31.     Unwilling to be a direct party to illegal activity, on January 15, 2019, Mr. McCarthy sent an e-mail to his managers, including Divisional Director, Andreas Hansen ("Mr. Hansen"), Mr. Antl, and Executive, Thierry Pelherbe ("Mr. Pelherbe"), objecting to the tax implications of the business transactions between Dellfrio, LEX, and soon, LUS as well.

32.     Despite voicing these serious concerns in writing, Mr. McCarthy's managers refused to engage in any reasonable steps to ameliorate their unlawful conduct, or to prevent same from occurring in the future.

33.     Anxious that his concerns were not being addressed, in May

2019, Mr. McCarthy reiterated his objections to Managing Accountant, Kim Rogar ("Ms. Rogar"), and Chief Financial Officer, Cherri Cooke ("Ms. Cooke").

34.     Notwithstanding our client's objections, LUS and LEX management continued engaging in unlawful business practices.

35.     Suddenly, in February 2020, in a desperate attempt to scapegoat Mr. McCarthy, Mr. Pelherbe began berating Mr. McCarthy, and blaming LUS' legal and financial troubles on our client's management skills.

36.     Shocked, on March 19, 2020, Mr. McCarthy reached out to Mr. Antl, forwarding/renewing all of his previous objections, and alleging that he was being unjustly blamed for LUS' troubles.

37.     In doing so, Mr. McCarthy engaged in protected activity pursuant to the FWA.

38.     Following this e-mail, Divisional Director, Alex Squarize ("Mr. Squarize"), retaliated against Mr. McCarthy by isolating him from management decisions and meetings in a clear effort to push him out of his employment in violation of the law.

39.     As a result, Mr. McCarthy objected to LUS' Human Resources ("HR") department.

40.     Unable to withstand Mr. Squarize's retaliatory and unlawful

7

conduct any longer, on April 30, 2020, Mr. McCarthy once again objected to LUS' HR Manager, Vicki Wishon ("Ms. Wishon").

41.     In response, on May 4, 2020, Ms. Wishon reached back out to our client to terminate him.

42.     That day, she was accompanied on the call by Mr. Squarize, Mr. Pelherbe, and Mr. Antl.

43.     LUS terminated Mr. McCarthy's employment in retaliation for his objections to LUS' and LEX's violations of law.

44.     Defendant did not have a legitimate, non-retaliatory reason for its adverse employment action(s) against Plaintiff.

45.     Any reason provided by Defendant for its adverse employment action(s) against Plaintiff is a pretext and a cover-up for illegal retaliation.

46.     The persons who castigated Mr. McCarthy for objecting to LUS' violations of law were decision-makers in terms of retaliating against Plaintiff by terminating his employment.

47.     There is an extremely close temporal proximity/nexus between Plaintiff objections to the violations of law, or what Plaintiff reasonably believed to be violations of law, and his termination.

48.     Plaintiff's objections to the violations of law, or what Plaintiff reasonably believed to be violations of law, is considered protected activity

pursuant to Fla. Stat. § 448.102(3), and qualified Mr. McCarthy as a whistleblower under the law.

49.     Under the FWA, an employer may not take any retaliatory personnel action against an employee because the employee objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.  *See* Section 448.102(3), Florida Statutes.

<u>TITLE VII / FCRA VIOLATIONS</u>

50.     Throughout Mr. McCarthy's employment, LUS routinely denied promotions and lucrative employment opportunities to Hispanic employees, and employees of non-German and non-Brazilian nationality/ancestry.

51.     For example, in August 2019, Mr. McCarthy applied for a Divisional Director position at LUS after giving over nearly four (4) years of loyal service to the company.

52.     Despite his commitment and loyalty, LUS Managers did not afford Mr. McCarthy even the courtesy of an interview before passing him over and awarding the job to Mr. Squarize, a Brazilian employee with German ties.

53.     When Mr. McCarthy asked why he had been unceremoniously excluded from the selection process, LUS Management informed him that he

was not qualified for the position, as he lacked "sales experience."

54.     However, this requirement wasn't applied equally as Mr. Squarize, who had as much sales experience as Mr. McCarthy, was instantly installed as LUS' new Division Director.

55.     As if to leave no room to doubt the discriminatory animus borne against Hispanic employees at LUS, Mr. Squarize himself directly mocked our client's last name, and feigned incredulity at the fact that a Honduran/Hispanic person could organically possess it.

56.     These overt displays of discrimination were public, frequent, and constitute direct evidence of race/national origin discrimination in violation of Title VII/FCRA.

57.     Mr. McCarthy refused to suffer this unlawful discrimination in silence so, throughout his employment, he objected numerous times to HR regarding the discriminatory comments he endured on a constant basis, yet nothing was ever done.

58.     The last of his objections occurred less than a week before his termination, at the same time he renewed his objections to LUS' unlawful practices.

59.     Mr. McCarthy's objections constituted protected activity pursuant to Title VII/FCRA.

60.     Title VII/FCRA prohibits race and national origin discrimination in the workplace.

61.     Plaintiff's termination constitutes an adverse action as defined by Title VII/FCRA.

62.     Plaintiff suffered an adverse action as a result of his race and national origin.

63.     Defendant does not have a non-discriminatory, non-retaliatory rationale for allowing and participating in the discrimination and termination suffered by Plaintiff.

64.     Plaintiff's termination was for pretextual and discriminatory reasons based on Plaintiff's race and national origin

65.     Plaintiff was treated in a disparate manner from his non-Hispanic/Honduran counterparts.

66.     By reason of the foregoing, Defendant's actions violated Title VII/FCRA.

67.     Plaintiff suffered sufficiently severe and pervasive harassment to create an abusive working environment and, ultimately, termination, because of his race and national origin.

68.     Any reason provided by Defendant for its actions is a pretext and cover-up for illegal discrimination.

69.     The temporal proximity between Plaintiff's objections to what he reasonably perceived to be discrimination and his termination is sufficiently close to establish a temporal nexus between the two events.

70.     Plaintiff has suffered damages as a result of Defendant's illegal conduct towards him.

71.     Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent him in the litigation and has agreed to pay the firm a reasonable fee for its services.

## COUNT I:  DISCRIMINATION IN<br>VIOLATION OF TITLE VII BASED ON NATIONAL ORIGIN

72.     Plaintiff re-alleges and re-adopts the allegations contained in paragraphs 1, 2, 4-12, 16, 17, 19, 20, 49-70, of the Complaint as if fully set forth in this Count.

73.     The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against national origin discrimination under Title VII.

74.     The discrimination to which Plaintiff was subjected was based on his national origin.

75.     Defendant's discriminatory comments and actions in failing to offer opportunities due to Plaintiff's national origin provide direct evidence of its discriminatory motive to discriminate against Plaintiff. *See, e.g.,*

*E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068-69 (11th Cir. 1990).

76.     National origin discrimination includes discrimination based on the place of origin of an individual's ancestors, or because the individual possesses the physical, cultural, or linguistic characteristics of a national origin group.  29 C.F.R. § 1606.1; *see also Salas v. Wis. Dep't of Corr.*, 493 F.3d 913 (7th Cir. 2007).

77.     The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

78.     Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

79.     The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

80.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Title VII.

81.     Plaintiff has no plain, adequate, or complete remedy at law for

the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff demands trial by jury, reemployment/reinstatement, back pay, lost wages, front pay if reinstatement and/or reemployment is not possible, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT II:  RETALIATION IN
## VIOLATION OF TITLE VII BASED ON NATIONAL ORIGIN

82.    Plaintiff re-alleges and re-adopts the allegations contained in paragraphs 1, 2, 4-12, 16, 17, 19, 20, 49-70 of the Complaint as if fully set forth in this Count.

83.    The acts of Defendant by and through its agents and employees, violated Plaintiff's rights against being retaliated against for opposing discrimination under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e, *et seq*.

84.    The retaliation to which Plaintiff was subjected was based on his opposition to Defendant's illegal and discriminatory actions based on his national origin.

85.    Plaintiff's termination was within close temporal proximity of his objections to Defendant that he felt he was being discriminated against

based on his national origin.

86.    Plaintiff's objections constituted protected activity under Title VII.

87.    Plaintiff was terminated as a direct result of his objections to what he reasonably believed to be national origin discrimination.

88.    Plaintiff's objections to Defendant's illegal conduct, and his termination, are causally related.

89.    Defendant's stated reasons for Plaintiff's adverse employment action are a pretext.

90.    The conduct of Defendant its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

91.    The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant to deter it, and others, from such conduct in the future.

92.    Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

93.     Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**,     Plaintiff     demands     trial     by     jury, reemployment/reinstatement, back pay, unpaid wages, front pay if reinstatement and/or reemployment is not possible, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

<u>**COUNT III:  DISCRIMINATION IN**</u>
<u>**VIOLATION OF THE FCRA BASED ON NATIONAL ORIGIN**</u>

94.     Plaintiff realleges and re-adopts the allegations contained in paragraphs 1-3, 4-12, 16, 17, 19, 20, 49-70 of the Complaint as if fully set forth in this Count.

95.     The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against national origin discrimination under the Florida Civil Rights Act, Chapter 760, Florida Statutes.

96.     The discrimination to which Plaintiff was subjected was based on his national origin.

97.     Defendant's discriminatory comments and actions were egregious, and provide direct evidence of its discriminatory motive to discriminate against Plaintiff. *See, e.g., E.E.O.C. v. Beverage Canners, Inc.*,

897 F.2d 1067, 1068-69 (11th Cir. 1990).

98.    National origin discrimination includes discrimination based on the place of origin of an individual's ancestors, or because the individual possesses the physical, cultural, or linguistic characteristics of a national origin group.  29 C.F.R. § 1606.1; *see also Salas v. Wis. Dep't of Corr.*, 493 F.3d 913 (7th Cir. 2007).

99.    The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

100.   Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

101.   The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

102.   Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

103.   Plaintiff has no plain, adequate or complete remedy at law for the

actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff demands trial by jury, reemployment/reinstatement, back pay, unpaid wages, front pay if reinstatement and/or reemployment is not possible, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT IV:  RETALIATION IN
## VIOLATION OF THE FCRA BASED ON NATIONAL ORIGIN

104.    Plaintiff re-alleges and re-adopts the allegations contained in paragraphs 1-3, 4-12, 16, 17, 19, 20, 49-70 of the Complaint as if fully set forth in this Count.

105.    The acts of Defendant by and through its agents and employees, violated Plaintiff's rights against being retaliated against for opposing discrimination under Section 760.10(7), Florida Statutes.

106.    The retaliation to which Plaintiff was subjected was based on his opposition to Defendant's illegal and discriminatory actions based on his national origin.

107.    Plaintiff's termination was within close temporal proximity of his objections to Defendant that he felt he was being discriminated against based on his national origin.

108.   Plaintiff's objections constituted protected activity under the FCRA.

109.   Plaintiff was terminated as a direct result of his objections to what he reasonably believed to be national origin discrimination.

110.   Plaintiff's objections to Defendant's illegal conduct, and his termination, are causally related.

111.   Defendant's stated reasons for Plaintiff's adverse employment action are a pretext.

112.   The conduct of Defendant its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

113.   The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant to deter it, and others, from such conduct in the future.

114.   Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

115.   Plaintiff has no plain, adequate or complete remedy at law for the

actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff demands trial by jury, reemployment/reinstatement, back pay, unpaid wages, front pay if reinstatement and/or reemployment is not possible, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

### COUNT V:  DISCRIMINATION IN VIOLATION OF TITLE VII BASED ON RACE

116.   Plaintiff re-alleges and re-adopts the allegations contained in paragraphs 1, 2, 4-12, 16, 17, 19, 20, 49-70 of the Complaint as if fully set forth in this Count.

117.   The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against race discrimination under Title VII.

118.   The discrimination/disparate treatment to which Plaintiff was subjected was based on his race.

119.   Defendant's discriminatory comments and actions in failing to offer opportunities due to Plaintiff's race provide direct evidence of its discriminatory motive to discriminate against Plaintiff. *See, e.g., E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068-69 (11th Cir. 1990).

120.   The conduct of Defendant and its agents and employees

proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

121.   Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

122.   The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

123.   Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Title VII.

124.   Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff demands trial by jury, reemployment/reinstatement, back pay, lost wages, front pay if reinstatement and/or reemployment is not possible, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT VI:  RETALIATION IN
## VIOLATION OF TITLE VII BASED ON RACE

125.   Plaintiff re-alleges and re-adopts the allegations contained in paragraphs 1, 2, 4-12, 16, 17, 19, 20, 49-70 of the Complaint as if fully set forth in this Count.

126.   The acts of Defendant by and through its agents and employees, violated Plaintiff's rights against being retaliated against for opposing race discrimination under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e, *et seq*.

127.   The retaliation to which Plaintiff was subjected was based on his opposition to Defendant's illegal and discriminatory actions based on his race.

128.   Plaintiff's termination was within close temporal proximity of his objections to Defendant that he felt he was being discriminated against based on his race.

129.   Plaintiff's objections constituted protected activity under Title VII.

130.   Plaintiff was terminated as a direct result of his objections to what he reasonably believed to be race discrimination.

131.   Plaintiff's objections to Defendant's illegal conduct, and his termination, are causally related.

132.   Defendant's stated reasons for Plaintiff's adverse employment action are a pretext.

133.   The conduct of Defendant its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

134.   The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant to deter it, and others, from such conduct in the future.

135.   Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

136.   Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff demands trial by jury, reemployment/reinstatement, back pay, unpaid wages, front pay if reinstatement and/or reemployment is not possible, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court

deems just and proper.

## COUNT VII:  DISCRIMINATION IN
## VIOLATION OF THE FCRA BASED ON RACE

137.   Plaintiff realleges and re-adopts the allegations contained in paragraphs 1-3, 4-12, 16, 17, 19, 20, 49-70 of the Complaint as if fully set forth in this Count.

138.   The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against race discrimination under the Florida Civil Rights Act, Chapter 760, Florida Statutes.

139.   The discrimination to which Plaintiff was subjected was based on his race.

140.   Defendant's discriminatory comments and actions were egregious and provide direct evidence of its discriminatory motive to discriminate against Plaintiff. *See, e.g., E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068-69 (11th Cir. 1990).

141.   The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

142.   Plaintiff has suffered damages as a result of Defendant's illegal

conduct toward him.

143.   The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

144.   Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

145.   Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff demands trial by jury, reemployment/reinstatement, back pay, unpaid wages, front pay if reinstatement and/or reemployment is not possible, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT VIII:  RETALIATION IN VIOLATION OF THE FCRA BASED ON RACE

146.   Plaintiff re-alleges and re-adopts the allegations contained in paragraphs 1-3, 4-12, 16, 17, 19, 20, 49-70 of the Complaint as if fully set forth in this Count.

147.    The acts of Defendant by and through its agents and employees, violated Plaintiff's rights against being retaliated against for opposing discrimination under Section 760.10(7), Florida Statutes.

148.    The retaliation to which Plaintiff was subjected was based on his opposition to Defendant's illegal and discriminatory actions based on his race.

149.    Plaintiff's termination was within close temporal proximity of his objections to Defendant that he felt he was being discriminated against based on his race.

150.    Plaintiff's objections constituted protected activity under the FCRA.

151.    Plaintiff was terminated as a direct result of his objections to what he reasonably believed to be race discrimination.

152.    Plaintiff's objections to Defendant's illegal conduct, and his termination, are causally related.

153.    Defendant's stated reasons for Plaintiff's adverse employment action are a pretext.

154.    The conduct of Defendant its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and

other non-pecuniary losses.

155.    The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant to deter it, and others, from such conduct in the future.

156.    Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

157.    Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

    **WHEREFORE**, Plaintiff demands trial by jury, reemployment/reinstatement, back pay, unpaid wages, front pay if reinstatement and/or reemployment is not possible, compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT IX
## FLORIDA'S PRIVATE WHISTLEBLOWER ACT – UNLAWFUL RETALIATION

158.    Plaintiff realleges and incorporates all allegations contained within paragraphs 1-3, 8, 13-48 of the Complaint as if fully set forth herein.

159.   On May 4, 2020, Defendant illegally terminated Plaintiff from his employment in violation of Section 448.102(2), Florida Statutes.

160.   Plaintiff was retaliated against and terminated in violation of Section 448.102(2), Florida Statutes, for providing information to an appropriate investigator concerning Defendant's alleged violation of a law, rule, or regulation.

161.   Plaintiff provided information to an appropriate investigator concerning Defendant's alleged violation of a law, rule, or regulation, and was terminated as a direct result of same, which constitutes a violation of the FWA.

162.   As a result of Defendant's intentional, willful and unlawful actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost benefits, lost employment status, as well as humiliation, pain and suffering, and other monetary and non-monetary losses.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, and emotional distress damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 17th day of June 2021.

By: __*Noah E. Storch*_____
Noah E. Storch, Esq.
Florida Bar No. 0085476
RICHARD CELLER LEGAL, P.A.
10368 W. State Rd.84, Suite 103
Davie, FL 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail:  noah@floridaovertimelawyer.com

*Trial Counsel for Plaintiff*